UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON LEMONTE APPLEWHITE,

        Plaintiff,

v.

MDOC, *et al.*,

        Defendants.

                                /

Case No. 1:07-cv-656

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions filed by defendant Paula Meyer, N.P. (docket no. 10), defendant Warden Thomas Phillips (docket no. 11), defendant Michigan Department of Correction (MDOC) (docket no. 14), and plaintiff (docket no. 18).

    **I.**    **Background**

In this action, plaintiff alleges that defendants MDOC, Paula Meyer, N.P., Warden Thomas Phillips, and two unknown parties (identified only as "Medical provider for Pugsley Correctional Facility" and "Medical Unit Manager") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, plaintiff alleges that prior to his incarceration, he was under the care of a pain specialist and was prescribed Ultram for pain. When he moved to the Pugsley Correctional Facility, he was taken off of Ultram and told to try other medications. He told Meyer "that some of the med [sic] she wanting [sic] to give me I had already had and did not work." Plaintiff alleges that Meyer "lied" when she said that plaintiff refused the other medications when he was taken off of Ultram and that he has been in pain ever since. Plaintiff

alleges that defendants intentionally interfered with a previously prescribed treatment. Plaintiff seeks $500,000.00 in damages and a court order "to be placed back on the medication that I was prescribed by the U of M Medical Center pain specialist."

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Plaintiff's motion for summary judgment

Plaintiff has not filed a timely "response" to any of defendants' motions for summary judgment as required by W.D. Mich. LCivR 7.2. Rather, plaintiff has filed a motion for summary judgment (docket no. 18), a supporting memorandum of law (docket no. 19), and a document entitled "citation of supplemental authority" (docket no. 24). These three documents do not contain any evidentiary material, but are in effect plaintiff's response to defendants' motions. For purposes of this report and recommendation, the court will view these three documents as plaintiff's combined response to defendants' dispositive motions.[1]

### IV. Motions for summary judgment based upon plaintiff's failure to exhaust administrative remedies

#### A. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance

---

[1] Plaintiff is advised that the court may reject or strike future court filings that do not comply with the Federal Rules of Civil Procedure or this court's local rules.

3

with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[2] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for

---

[2] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.* In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

      **B.**    **N.P. Meyer**

N.P. Meyer contends that plaintiff did not properly exhaust his administrative remedies against her. Meyer has identified three grievances filed by plaintiff. The court agrees with Meyer that two of the grievances neither name her nor apply to the failure to prescribe certain pain medication as alleged in this action.[3] However, the a third grievance, Grievance No. MPF07020007412F, addresses issues related to this claim. *See* Exh. C attached to Meyer's brief. Meyer contends that this grievance is unexhausted because plaintiff failed to indicate that he tried

---

[3] Grievance No. MPF07030011712D1, submitted on March 1, 2007, relates to plaintiff's treatment for hemorrhoids. *See* Exh. D attached to Meyer's brief. Grievance No. JCS07080075112F1, submitted on August 13, 2007 involves events at a different facility, the G. Robert Cotton Correctional Facility. *See* Exh. E attached to Meyer's brief.

to resolve the grievance within two business days of the incident and that he failed to file the grievance within five business days of attempting to resolve it, contrary to MDOC Policy Directive 03.02.130, ¶¶ R, X. While this may be true, the MDOC did not reject the grievances on those bases, bu rather addressed the merits of the grievance at all three steps of the grievance process. The MDOC's action is consistent with the underlying purpose of the prison grievance system, which is to give the MDOC a fair opportunity to correct its own mistakes and fully consider the prisoner's grievances within the agency. *See Woodford*, 126 S. Ct. at 2385, 2388 (noting that exhaustion gives an agency the opportunity to correct its own mistakes before being brought into federal court, that exhaustion discourages the disregard of the agency's procedures, that exhaustion promotes efficiency by resolving claims before the agency rather than the federal court, and that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance"). Because the MDOC did not reject this grievance as untimely or improperly filed, but addressed the merits of the grievance at all three steps of the appeal procedure in accordance with its Policy Directives, this grievance was exhausted. No notions of comity are violated if this court treats it as such. Accordingly, defendant Meyer's motion for summary judgment (docket no. 10) should be denied.

### C. Warden Thomas Phillips

Warden Phillips also contends that plaintiff failed to exhaust his administrative remedies against him. The court agrees in this instance. As stated above, the only grievance that applies to plaintiff's claim is Grievance No. MPF07020007412F. However, this grievance is directed at N.P. Meyer, not Warden Phillips. Plaintiff's only reference to the warden is a statement that plaintiff "sent [a kite] to Warden Phillips" as part of his attempt to resolve the issue prior to

filing the grievance; Warden Phillips is not referred to as involved with the "problem" addressed in the grievance and plaintiff does not identify any wrongdoing by the warden with respect to his pain medication prescriptions. *See* MDOC Policy Directive 03.02.130, ¶ T ("Date, times, places and names of all those involved in the issue being grieved are to be included"). In short, plaintiff has not "properly exhausted" any claim against the Warden. *See Woodford*, 126 S. Ct. at 2387 ("the PLRA exhaustion requirement requires proper exhaustion"). Warden Phillips' motion for summary judgment (docket no. 11) should be granted.

### V. Defendant MDOC

Finally, the MDOC contends that it is entitled to Eleventh Amendment Immunity with respect to plaintiff's claim for monetary damages and injunctive relief in the form of a court order placing him back on the previously prescribed pain medication. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." *See, e.g., Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Division*, 987 F.2d 376, 381 (6th Cir. 1993) (Eleventh Amendment immunity is far reaching, barring "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments"). Thus, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, provided the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S.

332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002) ("a State is not a 'person' against whom a § 1983 claim for money damages might be asserted").

In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune under the Eleventh Amendment from suits seeking monetary, equitable or declaratory relief. *See, e.g., Courtemanche v. Gregels*, 79 Fed. Appx. 115, 116 (6th Cir. 2003) (MDOC had absolute immunity from plaintiff's action seeking monetary and equitable relief); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478 at *2 (6th Cir. Nov. 1, 2000) (MDOC had absolute immunity from action seeking monetary damages against it); *Erdman v. Mich. Department of Corrections*, No. 94-2109, 1995 WL 150341 at *1 (6th Cir. Apr.5, 1995) (MDOC absolutely immune from action seeking monetary and declaratory relief); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688 at *1 (6th Cir. Nov.18, 1992) (MDOC absolutely immune from prisoner's action seeking monetary and injunctive relief). Accordingly, the MDOC's motion for summary judgment (docket no. 14) should be granted with respect to plaintiff's claims in this action.

### VI.     Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion for summary judgment (docket no. 18) be **DENIED**, that N.P. Paula Meyer's motion for summary judgment (docket no. 10) be **DENIED**, that Warden Thomas Phillips' motion for summary judgment

(docket no. 11) be **GRANTED**, that the MDOC's motion for summary judgment (docket no. 14) be **GRANTED**, and that defendants Warden Thomas Phillips and MDOC be **DISMISSED** from this action.


Dated: August 4, 2008                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).